## Forty Fort State Bank v. Grace

*James P. Harris, Jr.*, for plaintiff.
*Henry Thalenfeld*, for Commonwealth.

SCHIFFMAN, J., December 11, 1962.—This matter is before the court on the petition of plaintiff, Forty Fort State Bank, for a rule to strike the exception of the Commonwealth to the proposed distribution prepared by the sheriff of Luzerne County upon execution by plaintiff against defendant herein.

The facts giving rise to the present situation are as follows:

On November 17, 1955, defendant Joseph T. Grace executed a bond and mortgage on certain premises owned by him and located at the intersection of Wyoming Avenue and Pacific Avenue in the Borough of West Pittston, Luzerne County, Pennsylvania. This bond and mortgage were given contemporaneously to secure a debt of $47,000 owed by defendant to plaintiff. On April 17, 1958, defendant executed a mortgage in favor of the Pagnotti Coal Company in the amount of $10,000 which was recorded on the same date. On December 9, 1960, an affidavit of default was filed by one Elizabeth Domarasky, cashier of the Forty Fort State Bank, setting forth that defendant was then in default on this note and that the balance then due and payable was $43,533.69 plus costs and attorney's commission of ten percent. On the same date, James P. Harris, Jr., an attorney of this court, entered judgment against defendant Joseph T. Grace in the amount of $94,000 according to the terms of the bond executed herein by defendant.

On December 9, 1960, a praecipe for a writ of execution was filed and the sheriff of Luzerne County was directed to execute upon the obligation herein. On January 13, 1961, pursuant to said execution, the real estate of defendant set out above was sold to "Pitreal

Corp.", the highest bidder, for the sum of $53,100.

The sheriff of Luzerne County thereafter, on January 18, 1961, advertised that he had prepared a schedule of proposed distribution of the funds realized from this sale and that said schedule would remain on file in his office for ten days after said advertisement. This was done pursuant to Rule of Civil Procedure 3129(c) and Rule of Civil Procedure 3136(a).

The proposed schedule of distribution as prepared by the sheriff was as follows:

```
"Amount realized from sale                              $53,100.00
Sheriff's Costs & Printing        $164.40
Sheriff's Commission               280.50
Federal Stamps for Deed             58.85   503.75

To: Edward P. Zolnerowicz,
    Rec. of Deeds, 1% State
    Realty Tr. Tax                          531.00   1,034.75

To: Forty Fort State Bank
    On Execution
        17 Jan. Term 1961
    On Judgment
        149 Jan. Term 1961
    On Bond
        dated Nov. 17, 1955
    On Mortgage
        dated Nov. 17, 1955
    Recorded Nov. 19, 1955
        in Mortgage Book
        No. 689 Page 452
Debt                            42,677.41
Interest from 7/10/60 to
    Jan. 13, 1961                1,311.32
Atty. Commission 10%             4,267.74
Face Costs                          15.00          48,271.47

To: Pagnotti Coal Co.
    Mortgage dated
        April 17, 1958
    Recorded April 17, 1958
        in Mortgage Book
        No. 755 Page 645
        (To secure 10,000.00)
                                10,000.00
Balance to apply thereon                            3,793.78

    Total  .......................................$53,100.00"
```

The purpose of this preparation of a proposed schedule of distribution and advertisement thereof is to give interested parties an opportunity to enter exceptions to the proposed distribution. The last day upon which exceptions might normally have been entered was January 30, 1961, since January 28, 1961, the tenth day after the advertisement, fell on a Saturday. See Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 38, as amended by the Act of August 11, 1959, P. L. 691, sec. 1, 46 PS §538.

No exceptions were filed during this period of time. However, on February 3, 1961, the Commonwealth of Pennsylvania by order of this court, signed by the late Judge Aponick, was allowed to enter exception to the proposed distribution herein, nunc pro tunc, January 30, 1961.

The Commonwealth's exception relates to one judgment in favor of the Commonwealth of Pennsylvania against defendant Joseph T. Grace, filed to no. 122 March term, 1960, in the court of common pleas of this county, dated October 5, 1960, in the docketed amount of $15,389.78, and another such judgment filed in this court to no. 243 July term, 1960, dated May 10, 1960, in the docketed amount of $1,060. These judgments arise out of defendant's nonpayment of Pennsylvania sales tax on items sold by him in his business.

Plaintiff, Forty Fort State Bank, answered the petition of the Commonwealth for allowance of the petition for permission to file exceptions to the sheriff's schedule of proposed distribution on February 15, 1961, and set forth numerous facts relating to that aspect of the matter. On February 16, 1961, plaintiff filed a petition to strike the exception and requesting that the sheriff be directed to make distribution of the proceeds of the sale then in his possession according to his schedule set out above.

The proposition upon which plaintiff's petition is based is that the mortgage of plaintiff and the Pagnotti Coal Company both antedate the judgment liens of the Commonwealth of Pennsylvania and that, therefore, they are entitled to priority in distribution of the proceeds of the sale herein.

The further question raised is whether this court could grant to the Commonwealth of Pennsylvania the right to file its exception nunc pro tunc after the time for so filing had expired.

There is no question that historically, the sovereign is entitled to recover taxes out of the proceeds of a judicial sale before any judgment mortgagor or other claim or lien: Fiscal Code of April 9, 1929, P. L. 343, art. XIV, sec. 1401, 72 PS §1401. However, it is also true that the legislature of this Commonwealth may limit this right: Pittsburgh Petition, 376 Pa. 447.

Plaintiff contends that the legislature has subordinated this priority by the very terms of the act creating the Selective Sales and Use Tax Act of March 6, 1956, P. L. (1955) 1228, art. V, sec. 548, as amended, 72 PS §3403-548.

The following portion of the act is relied upon by plaintiff to support its contention:

"(b) Priority and Effect of Lien on Judicial Sale. All such liens [for unpaid sales taxes] shall have priority to, and be fully paid and satisfied out of, the judicial sale before any other obligation, judgment, claim, lien or estate with which the property may subsequently become charged or for which it may subsequently become liable; *subject, however, to mortgage or other liens existing and duly recorded at the time the tax lien is recorded . . .*" (Italics supplied.)

It is also significant to note that subparagraph (a) of the above referred section requires sales tax liens to be entered and docketed of record by the prothonotary of the appropriate county and that they cannot

become a lien upon a person's property *until such time as they have been docketed.*

In our opinion, the cumulative effect of these two provisions of the Selective Sales and Use Tax Act convey an intention upon the part of the legislature to grant to such liens no greater priority than a normal private lien or mortgage and thereby subordinate them to prior liens of record. This the legislature may do: Pittsburgh Petition, supra.

This is particularly so when we consider that the original draft of this act (House bill 2100 of the sessions of 1959) provided in section 548(b), that *upon execution by the Commonwealth,* all such tax liens should have priority over any other obligation, judgment, claim, lien or estate with which the franchises or property may *be* charged or for which it may be liable subject to the lien of real estate mortgages existing and duly recorded at the time the tax lien is recorded. . . .

The act quoted above as finally adopted, however, provides that upon the *judicial sale* all such tax liens shall have priority to any other judgment, claim, lien or estate with which the property may *subsequently become* charged or for which it may *subsequently* become liable.

It is apparent therefore that the legislature intended the sales tax liens to take priority on any judicial sale whether by the Commonwealth or otherwise only over those liens recorded subsequent to the recordation of the said sales tax liens.

Counsel for the Commonwealth argues ingeniously that it was the intention of the legislature that such priority should exist only upon an execution by the Commonwealth upon the unpaid sales tax obligations. The Commonwealth contends that the phrase "judicial sale" in section 548(b), supra, refers only to a judicial sale based upon the sales tax lien itself. It advances

the argument that the adoption of a contrary conclusion would give rise to an inconsistency between section 548(b) of the act, supra, and section 548(d) of the act.* It is urged that the adoption of such construction, therefore, would violate section 52(2) of the Statutory Construction Act, 46 PS §552(2), wherein it is provided "that the Legislature intends the entire statute to be effective and certain."

The Commonwealth argues that the alleged inconsistency would arise as follows:

Section 548(d) accords to the sales tax the right to be paid in distribution in receivership from the first money available for distribution, in priority to all other claims and liens except insofar as the laws of the United States may give a prior claim to the Federal Government. The Commonwealth then reasons that a mortgage which would not be saved in a judicial sale by virtue of the application of the Act of April 30, 1929, P. L. 874, 21 PS §651, would be subordinated in priority of payment to the sales tax lien by section 548(d) of the Sales Tax Act. It then reasons that to give effect to the Commonwealth sales tax priority over all other claims and liens under section 548(d), there must be a "judicial sale," and if there is a judicial sale, the

---

*"(d) Priority of Tax. Except as hereinbefore provided in the distribution, voluntary or compulsory, in receivership, bankruptcy or otherwise, of the property or estate of any person, all taxes imposed by this act which are due and unpaid and are not collectible under the provisions of section 535 hereof, shall be paid from the first money available for distribution in priority to all other claims and liens, except insofar as the laws of the United States may give a prior claim to the Federal government. Any person charged with the administration or distribution of any such property or estate, who shall violate the provisions of this section, shall be personally liable for any taxes imposed by this act, which are accrued and unpaid and are chargeable against the person whose property or estate is being administered or distributed": Act of March 6, 1956, P. L. (1955) 1228, art. V, sec. 548, as amended, 72 PS §3403-548(d).

provisions of section 548(b) would operate to deny the sales tax lien the priority accorded it by section 548(d).

This argument fails to take into account the first sentence of section 548(d) which limits the application of this section only to situations involving distributions, voluntary or compulsory, in receivership, bankruptcy or otherwise, and excepts from the provisions of section 548(d) those situations thereinbefore provided for by the act. Section 548(b) is one of the sections therefore excepted from the workings of this provision of the act. Section 548(d) creates a distinct situation and sets up a separate priority in the case of judicial sales under circumstances involving receivership, bankruptcy, etc.

We, therefore, conclude that there is no inconsistency between these sections of the act. After considering all the arguments of all the parties involved in this matter, we conclude that the legislative intent therein, found in section 548(b) of the act, was to give priority to sales tax liens only from the date of their recordation and to subordinate them to prior existing properly recorded mortgages and liens.

In view of this conclusion, therefore, we find that the Commonwealth liens for sales and use tax are not entitled to priority over the admittedly prior recorded mortgages of plaintiff, Forty Fort State Bank, and the second mortgagee, Pagnotti Coal Company.

One further point should be mentioned. The Commonwealth cites as controlling the decision of this court in the case of Tamaqua National Bank v. Kelly's Supper Club, Inc., 51 Luz. 83, as to the priority of sales tax liens over other liens or claims. We believe the circumstances are distinguishable. In the Tamaqua National Bank Case, supra, the provisions of the Sales and Use Tax Act herein involved were not considered nor did plaintiff mortgagee in that case appear as a claimant to the fund. The only question therein presented was as to the priority of sales and use taxes and unemploy-

ment compensation taxes over local real estate taxes. This court, in that case, decided in favor of the priority of the Commonwealth taxes over local taxes on grounds other than those involved herein.

Our reasoning in this case is supported by the decision of Klepser, P.J., in First National Bank, Altoona v. Brown, 27 D. & C. 2d 569, and by a decision rendered by Quinlan, J., in the case of Gregory v. Bill's Auto Exchange, Inc., 29 D. & C. 2d 285.

In view of our conclusion with regard to the relative priority of the claims involved herein, it is not necessary to determine the remaining question as to the propriety of permitting the Commonwealth to belatedly file its exception herein.

Accordingly, we enter the following

*Order*

The exception of the Commonwealth of Pennsylvania to the sheriff's schedule of distribution is hereby dismissed and the Sheriff of Luzerne County is directed to make distribution of the proceeds of the sale herein in accordance with said schedule of proposed distribution.